UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALAN S. MANN,<br><br>                Petitioner,<br>v.<br><br>MORGAN STANLEY SMITH BARNEY, LLC and MSSB FA NOTES HOLDINGS, LLC,<br><br>                Respondents. | Case No. 2:15-cv-00217-GMN-PAL<br><br>**ORDER**<br><br>(Mot. Attys Fees – Dkt. #28) |

This matter is before the Court on the Motion for Attorneys' Fees and Costs (Dkt. #28) by Respondents Morgan Stanley Smith Barney, LLC and Morgan Stanley Smith Barney FA Notes Holdings, LLC[1] (jointly, "Morgan Stanley"). This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-9 of the Local Rules of Practice. The Court has considered the Motion, Opposition (Dkt. #29), and Reply (Dkt. #30).

## **BACKGROUND**

This case arises out of an arbitration award issued in December 2014 after arbitration proceedings between Petitioner Alan S. Mann and his former employer, Morgan Stanley. Mr. Mann was employed by Morgan Stanley from May 1998 through February 2012. *See* Mot. Attys Fees (Dkt. #28) at 2. During Mann's employment, Morgan Stanley agreed to fund two loans to Mann in the amounts of $28,229.09 ("Note One"), Mot. Ex. 1 (Dkt. #28-1) at 7, and $196,153.20 ("Note Two"), *Id*., Ex. 2 at 10, (collectively, the "Notes"). Am. Order (Dkt. #25) at 1. The Notes both provided that the full outstanding amounts would become due and owing upon the termination of Mann's employment with Morgan Stanley. *Id*. Additionally, each of the Notes contained an

---

[1] Morgan Stanley Smith Barney FA Notes Holdings, LLC states that it was incorrectly named in this case as MSSB FA Notes Holdings, LLC.

attorneys' fee provision stating that Mann would reimburse Morgan Stanley for all costs and expenses incurred as a result of a breach of the Notes. Mot. Attys Fees (Dkt. #28) at 5–6. Mr. Mann voluntarily resigned on February 3, 2012, which prompted Morgan Stanley to demand payment of the outstanding balances. Am. Order (Dkt. #25) at 1.

On June 15, 2012, Morgan Stanley initiated an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"), seeking damages against Mann in excess of $170,207 for repayment of the Notes. *Id*. at 1–2. The arbitration proceedings concluded on December 3, 2014, when FINRA issued an arbitration award requiring Mann to pay Morgan Stanley compensatory damages and interest totaling $179,199 on the Notes, $30,000 in attorney's fees, and $5,000 in costs. *Id*. at 3.

On January 2, 2015, Mann initiated a proceeding to vacate the arbitration award in the Eighth Judicial District Court of the State of Nevada. *Id*. Morgan Stanley removed the matter to this Court on February 6, 2015. Pet. for Removal (Dkt. #1). Mann later filed an Amended Petition to Vacate Arbitration Award (Dkt. #16) in this Court. Morgan Stanley opposed Mann's Amended Petition and asked the Court to confirm of the arbitration award. Opp'n Am. Pet. (Dkt. #20). On August 10, 2015, the district court denied the Amended Petition and entered judgment in favor of Morgan Stanley. Order (Dkt. #23); Judgment (Dkt. #24). The next day, the district court entered an Amended Order (Dkt. #25) granting Morgan Stanley's request to confirm the arbitration award and amending the judgment accordingly. *See also* Am. Judgment (Dkt. #26).

## DISCUSSION

**I.   UNDER NEVADA AND NEW YORK LAW, THE NOTES ENTITLE MORGAN STANLEY TO AN AWARD OF ATTORNEYS' FEES**

As a preliminary matter, the Court finds that attorneys' fee provisions in the Notes allow for the attorneys' fees and costs Morgan Stanley requests in the Motion. A district court exercising diversity jurisdiction, as here, applies state law to determine whether an award of attorney's fees is permitted. *Canada Life Assur. Co. v. LaPeter,* 563 F.3d 837, 947 (9th Cir. 2009). Here, the state law applicable to Note One is Nevada law and New York law is applicable to Note Two.

/ / /

### A.   Applying Nevada Law to Note One

In Nevada, a court "cannot award attorney fees unless authorized by statute, rule, or contract." *Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 1059 (Nev. 2008). "Parties are free to provide for attorney fees by express contractual provisions." *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012) (citing *Musso v. Binick*, 764 P.2d 477, 477 (Nev. 1988). The Nevada Supreme Court has acknowledged that attorney fees award made pursuant to contract includes fees incurred on appeal. *In re Estate & Living Trust of Miller*, 216 P.3d 239, 243 (Nev. 2009) (citing *Musso*, 764 P.2d at 477–78). The decision to award attorneys' fees is left to the sound discretion of the district court. *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 73–74 (Nev. 1994).

Note One specifies that Mr. Mann "shall reimburse Morgan Stanley for any and all damages losses, costs and expenses *(including attorneys' fees and costs)* incurred or sustained by Morgan Stanley as a result of the breach of the undersigned of any of the terms of this Note." *See* Mot. Ex. 1 (Dkt. #28-1) at 8 (emphasis added). Mann argues that the parties did not agree that attorneys' fees could be awarded, rather, the parties only agreed to attorneys' fees specifically related to expenses. *See* Opp'n Mot. Attys Fees (Dkt. #29) at 1–2. Morgan Stanley asserts that the plain meaning of this contract provision was for attorneys' fees to be recoverable as one type of expense. Reply (Dkt. #30) at 3. The intent of this term does not change simply because the phrase "attorneys' fees and costs" is located within a parenthetical. *Id*. The Court agrees. The language of the Notes is clear and unambiguous: attorneys' fees are recoverable. *See, e.g.*, *Davis*, 278 P.3d at 515 (citing *Ellison v. C.S.A.A.*, 797 P.2d 975, 977 (Nev. 1990)). The Court will enforce the fee provision in Note One as written.

### B.   Applying New York Law to Note Two

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atlantic Marine Const. Co.*, *Inc. v. U.S. Dist. Ct.*, --- U.S. ----, 134 S.Ct. 568, 582 (2013). Nevada uses the "substantial relationship" test when considering which state's law to apply to contract claims. *Consol. Generator–Nev.*, *Inc. v. Cummins Engine Co.*, *Inc.*, 971 P.2d 1251, 1253–54 (Nev. 1998) (providing factors for determining whether a state possesses a

3

substantial relationship with a contract). Additionally, applying another state's law must not violate a strong public policy of Nevada. *Id.* at 1254. "So long as 'the parties acted in good faith and not to evade the law of the real situs of the contract,' Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract'." *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014) (quoting *Sievers & Lake Tahoe Land Co., Inc. v. Diversified Mtg. Investors*, 603 P.2d 270, 273 (Nev. 1979)).

Note Two contains a choice of law provision selecting New York law. Mot. Ex. 2 (Dkt. #28-1) at 14 ("This Note shall be construed in accordance with the laws of the State of New York…."). There is no evidence suggesting that the parties did not act in good faith when selecting New York law, and Mr. Mann does not challenge the choice of law provision. Thus, New York law applies to Note Two.

Under New York law, when a contract provides that in the event of litigation a losing party will pay the attorneys' fees of a prevailing party, "the court will order the losing party to pay whatever amounts have been expended" so long as those amounts are reasonable. *Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 496 F. Supp. 2d 362, 364 (S.D.N.Y. 2007) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

Note Two contains a broad attorney's fees provision that obligates Mr. Mann to reimburse Morgan Stanley for the following:

> any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings . . . that may be suffered or incurred . . . in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the note.

*See* Mot. Ex. 2 at 6. Like his argument in relation to Note One, Mann asserts that the fee provision in Note Two only allows for attorneys' fees related to the incurrence of "costs and expenses." Opp'n Mot. Attys Fees (Dkt. #29) at 2–3. Similar to Note One, however, Mann's position is contrary to the plain language and intent of the fee provision. The Court will enforce the fee provision in Note Two as written and evaluate whether the amount of attorneys' fees sought is appropriate and reasonable.

4

## II.   MORGAN'S STANLEY'S REQUEST FOR ATTORNEYS' FEES

### A.   Legal Standard

The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). To determine the amount of a reasonable attorney fee, district courts typically proceed in two steps. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). In the first step, courts generally apply "the 'lodestar' method to determine what constitutes a reasonable attorney's fee." *Id.* (citing *Costa v. Comm'r of Soc. Security Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012)). Using the loadstar method, the court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), *cert. denied*, 136 S. Ct. 267 (2015). The product of this computation is sometimes referred to as the "lodestar figure" and in most cases it is a "presumptively reasonable" fee. *Gonzalez*, 729 F.3d at 1202 (citing *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006)); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

In the second step, the district court may adjust the lodestar upward or downward based on a variety of factors.[2] *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). Relevant factors include the attorney's preclusion of other

---

[2] As discussed in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975), the Ninth Circuit has recognized the following 12 factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996) (citing *Kerr*, 526 F.2d at 70); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); D. Nev. LR 54-16. However, numerous courts have recognized that the bulk of the *Kerr* factors have been subsumed into the initial loadstar calculation and the district court does not need to consider those factors. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984); *City of Burlington v. Dague*, 505 U.S. 557, 561–64 (1992) (casting doubt on the applicability of the sixth and tenth *Kerr* factors); *Morales*, 96 F.3d at 364 n.9 (finding that factors one through five have been subsumed); *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487–88 (9th Cir. 1988) (noting that the "results obtained" portion of the eighth factor is subsumed, along with inadequate documentation and quality of representation).

employment due to accepting the case; time limitations imposed by the client or the circumstances; the amount involved; the nature and length of the professional relationship with the client; and awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996) (citing *Kerr*, 526 F.2d at 70). "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Morales*, 96 F.3d at 364 n.8 (citation omitted); *see also Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (noting that the lodestar figure should only be adjusted in rare and exceptional cases).

### B. Analysis of Attorneys' Fees Under the Lodestar Method

The Motion seeks an award of $49,490 in attorneys' fees related to defending the arbitration award and obtaining judgment in this action. Morgan Stanley request is based on the following reported hours and rates for the attorneys and paralegal who worked on this matter:

| TIMEKEEPER | STATUS | HOURS BILLED | RATE | AMOUNT |
| --- | --- | --- | --- | --- |
| Mauricio S. Beugelmans | Partner | 0.40 | $260.00 | $104.00 |
| Sophie I. Myers | Associate | 126.90 | $200.00 | $25,380.00 |
| Julita Kurpinska | Paralegal | 1.30 | $100.00 | $130.00 |
| Daren A. Luma | Partner | 87.60 | $260.00 | $22,776.00 |
| Carlos Blumberg | Local Counsel | 4.0 | $275.00 | $1,100.00 |
| **TOTALS** | | **220.20** | | **$49,490.00** |

#### 1. Step One – Appropriate Market Rate

In determining the lodestar figure, the Court's first task is to evaluate whether the attorneys' hourly rate is reasonable for the District of Nevada.

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the relevant community. *Id.*; *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The relevant "community" is the district in which the court sits. *Camacho*, 523 F.3d at 979. In calculating a reasonable fee award, a district court has discretion to reduce an attorney's rate to ensure that it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry*

1   *v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) (internal quotation omitted). Rate
2   determinations in other cases in the District of Nevada have found hourly rates as much as $450
3   for a partner and $250 for an experienced associate to be the prevailing market rate in this forum.[3]
4         The party seeking an award of fees must submit evidence supporting the rates claimed.
5   *Hensley*, 461 U.S. at 433; *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100,
6   1105 (9th Cir. 2015) (requiring proof of market rates in the relevant community, which are "often
7   in the form of affidavits from practitioners"). The movant has an initial burden of production to
8   produce "satisfactory evidence that the fee requested is reasonable." *Beauchamp v. Anaheim*
9   *Union High Sch. Dist.*, --- F.3d ----, 2016 WL 1039691, at *7 (9th Cir. 2016). Once a movant
10  discharges its initial burden of production, the court will make a factual determination as to
11  whether the requested fee is reasonable. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1105.
12        Here, the Motion provides a declaration from Morgan Stanley's counsel as evidence that
13  the rates charged are reasonable. *See* Decl. of Daren A. Luma, Esq. (Dkt. #28-1) at ¶ 9 (stating
14  that "the fees and costs charged are reasonable"). The hourly rates counsel charged are as follows:

| TIMEKEEPER | TITLE | HOURLY RATE |
|---|---|---|
| Mauricio S. Beugelmans | Partner | $260 |
| Sophie I. Myers | Associate | $200 |
| Julita Kurpinska | Paralegal | $100 |
| Daren A. Luma | Partner | $260 |
| Carlos Blumberg | Local Counsel | $275 |

20  Additionally, the Motion asserts that Mr. Luma's hourly rate of $260 was discounted 35–43%

---

[3] *See, e.g., Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be $375–$400 for partner with over thirty-five years of experience); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth, LLC*, 2013 WL 4045926 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Restaurant Sys., Inc.*, 2013 WL 3878692 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275); *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657 (D. Nev. April 24, 2013) (finding $425–$475 for partner time reasonable, but $275-$375 for associate time to be excessive based on the prevailing market rate and adjusting the amount to $250–$325); *Aevoe Corp. v. Shenzhen Membrane Precise Electron, Ltd.*, 2012 WL 2244262 (D. Nev. June 15, 2012) (finding $400 reasonable for a partner in a firm that concentrates on complex intellectual property litigation).

from the rate the firm charges other institutional and individual clients and Ms. Meyers rate was discounted 20–33%. Mot. at 11. Although this information informs the Court of counsel's customary fee, the Declaration and Motion do not address whether the hourly rates are reasonable within the relevant community, the District of Nevada. Nevertheless, based on this Court's knowledge of the standard hourly rates for attorneys with comparable experience, skill, and reputation, this Court finds that the requested hourly rates are reasonable. Additionally, Mann does not challenge the hourly rates, only the amount of hours claimed.

## 2. Step One – Reasonable Number of Hours Expended

In determining the lodestar figure, the Court's second task is to evaluate whether Morgan Stanley's attorneys expended a reasonable number of hours on this matter.

In addition to evidence supporting the hourly rates claimed, the party seeking an award of fees must submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433; *see also $28,000.00 in U.S. Currency*, 802 F.3d at 1105 (noting that such evidence must include "detailed documentation of the hours worked"). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Hensley*, 461 U.S. at 433. The district court should also exclude from this initial fee calculation hours that were not reasonably expended. *Id.* at 433–34 (citation omitted). In other words, the court has discretion to "trim fat" from, or otherwise reduce, the number of hours claimed to have been spent on the case. *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); *see also Gates*, 987 F.2d at 1399.

Here, the Motion contains itemized lists of the hours Morgan Stanley's counsel expended on this case as evidence that the number of hours expended were reasonable. *See* Beugelmans, LLP Detail Transaction File List ("Beugelmans Billing"), Mot. Ex. 3 (Dkt. #28-1); Blumberg Law Firm Invoice, Ex. 4. The number of hours counsel expended in this action are as follows:

/ / /

/ / /

/ / /

/ / /

| TIMEKEEPER | TITLE | HOURS BILLED |
|---|---|---|
| Mauricio S. Beugelmans | Partner | 0.4 |
| Sophie I. Myers | Associate | 126.9 |
| Julita Kurpinska | Paralegal | 1.3 |
| Daren A. Luma | Partner | 87.6 |
| Carlos Blumberg | Local Counsel | 4.0 |
| **TOTAL HOURS BILLED** | | **220.2** |

These 220.2 reported hours are for a very limited number of filings: Petition for Removal (Dkt. #1), two Verified Petitions for Permission to Practice Pro Hac Vice (Dkt. ##5, 6), Certificate of Interested Parties (Dkt. #7), Stipulation for Extension of Time (Dkt. #9), Statement Regarding Removed Action (Dkt. #13), Joint Status Report (Dkt. #19), and Opposition to Amended Petition to Vacate Arbitration Award (Dkt. #20). All but one of these filings are very short, ministerial documents requiring little or no legal judgment or analysis. Counsel did not appear personally before the Court on any matter and Mr. Mann's petition was decided without oral argument. A total of 27 filings are on the docket prior to Morgan Stanley filing the Motion. After reviewing the filings in this case against the billing records submitted, the Court finds that the number of reported hours is unreasonable.

Typically, a district court will "defer to the winning lawyer's professional judgment" as to how much time he or she was required to spend on the case." *Ryan*, 786 F.3d at 763 (quoting *Moreno*, 534 F.3d at 1112). However, the district court has a "great deal of discretion" to "exclude those hours for which it would be unreasonable to compensate the prevailing party." *Gonzalez*, 729 F.3d at 1203 (citing *Gates*, 987 F.2d at 1399). The court may reduce the amount of fees to: (i) reflect a party's limited degree of success, (ii) account for block billing, or (iii) deduct those hours the court deems excessive, among other reasons. *Ryan*, 786 F.3d at 763 (citation omitted). For example, billing records containing hours that are "excessive, redundant, or otherwise unnecessary" may be excluded. *Id.*; *see also Herrington v. Cty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989) (reduction of hours was necessary due to "duplication of effort" by multiple attorneys assigned to a case).

In this case, *all* of the billing records submitted by Morgan Stanley' counsel represent a block billing format. The attorneys did not provide the actual amount of time spent for discrete

9

1  tasks and provided only the total amount of time expended on a given calendar day.  *See*
2  Beugelmans Billing, Mot. Ex. 3 (Dkt. #28-1); Blumberg Law Firm Invoice, Ex. 4.  This Court has
3  discretion to reduce fees to "account for the potential inflation of hours that may result from block
4  billing."  *Ryan*, 786 F.3d at 765.  Although the Beugelmans Billing describes the tasks completed
5  (with varying degrees of specificity), there is no specific allotment of time per task.  *See Cadena*
6  *v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (explaining that attorneys "block bill"
7  their time when they record multiple tasks in large blocks of time without explaining how hours
8  were allotted to specific tasks).  Although counsel "is not required to record in great detail how
9  each minute of his time was expended," the Supreme Court has advised that counsel "should
10 maintain billing time records in a manner that will enable a reviewing court to identify distinct
11 claims."  *Hensley*, 461 U.S. at 437 & n.12.

12      Here, counsel's block billing greatly made it very difficult to analyze the number of hours
13 expended.  For example, a 6.60 hour time entry for Mr. Luma on April 2, 2015, provides the
14 following description: "Finalized initial draft of Opposition to Amended Petition to Vacate; phone
15 conference with client regarding same."  Beugelmans Billing, Mot. Ex. 3 (Dkt. #28-1) at 21.  The
16 Court has no way of knowing whether the client phone conference lasted 10 minutes or several
17 hours and is forced to estimate the number of hours to apportion to each task.

18      The Court finds that the number of hours expended on this action was excessive, and
19 Morgan Stanley has not provided adequate evidence to support the reasonableness of the number
20 of hours spent.  It appears that more than 40 hours were spent on drafting and preparing the seven
21 ministerial filings identified above, over 25 hours were spent reviewing portions of the arbitration
22 record, over 50 hours were spent on legal research, and approximately 80 hours were spent drafting
23 and editing Morgan Stanley's Opposition brief.  The issues raised in Mr. Mann's request to vacate
24 the arbitration award were not complex or novel.  Mann argued that: (i) Arbitrator William Ogburn
25 Huggins III demonstrated an evident partiality by failing to disclose a lawsuit, and (ii) the
26 arbitration award was issued in manifest disregard of the law because there was insufficient
27 evidence to support the award of attorneys' fees and costs.  Morgan Stanley's Opposition brief
28 was approximately 22-pages long, minus the case caption, attorney signature blocks, and

certificate of service. The amount sought ($49,490) is nearly $20,000 more than the arbitration panel awarded for the entire arbitration. The number of hours is excessive on its face, especially because the attorneys practicing with the Beugelmans, LLP law firm have significant experience with financial services matters, including FINRA arbitration and related court proceedings. *See* Mot. Attys Fees (Dkt. #28) at 12. Mr. Luma, the lead partner in this case, has 15 years experience representing brokerage clients. The Court agrees with Mann that lawyers specializing in representing brokerage clients, who frequently brief motions to vacate arbitration awards, must surely know the law in this area and have a substantial "brief bank" to rely on rather than starting from scratch with each new motion. Accordingly, the Court will recommend reducing the number of hours to a number that, in the Court's experience, would be reasonably expended on this action:

| **ATTORNEY TASKS** | **REASONABLE NUMBER OF ATTORNEY HOURS** |
|---|---|
| Communications with client, opposing counsel, or courts | 6.0 |
| Legal Research regarding 9th Circuit, New York, and Nevada law; FFA case law; FINRA rules; and D. Nev. Local Rules | 10.0 |
| Drafting/Preparing Notice of Removal, Stipulation to Extend Time for Briefing, Certificate of Interested Parties, two Pro Hac Vice Applications, and Joint Status Report | 9.0 |
| Review of Arbitration Record, Petition to Vacate Arbitration Award, and Amended Petition to Vacate Arbitration Award | 10.0 |
| Drafting/Preparing Opposition to Amended Petition to Vacate Arbitration Award, Appendix of Exhibits, Declaration | 30.0 |
| **TOTAL** | **65.0** |

### 3. <u>The Lodestar Figure</u>

Having determined the reasonable hourly rate and number of hours expended, the lodestar figure may be calculated. However, because Morgan Stanley's block billing necessitated deductions to reflect a reasonable number of hours for categories of attorney tasks, and two attorneys (Ms. Meyers and Mr. Luma) completed the vast majority of those tasks, the Court will first deduct the time expended by the three other timekeepers from the 65-hour total:

/ / /

/ / /

11

| TIMEKEEPER | HOURS BILLED | RATE | LODESTAR FIGURE |
|---|---|---|---|
| Mauricio S. Beugelmans | 0.4 | $260.00 | $104.00 |
| Julita Kurpinska | 1.3 | $100.00 | $130.00 |
| Carlos Blumberg | 4.0 | $275.00 | $1,100.00 |
| **TOTAL** | **5.7** | | **$1,334.00** |

With the remaining 59.3 hours, the Court will apportion the time based on the overall percentage of time billed by Ms. Meyers and Mr. Luma. The Court has apportioned the remaining hours to apply the correct hourly rate to Ms. Meyers and Mr. Luma's reasonable hours expended:

| TIMEKEEPER | HOURS BILLED | PERCENTAGE OF TIME BILLED | HOURS ALLOWED | RATE | LODESTAR FIGURE |
|---|---|---|---|---|---|
| Sophie I. Myers | 126.9 | 59% | 35.0 | $200.00 | $7,000.00 |
| Daren A. Luma | 87.6 | 41% | 24.3 | $260.00 | $6,318.00 |
| **TOTAL** | **214.5** | | **59.3** | | **$13,318.00** |

These tables multiply the reasonable hourly rate by the number of hours the Court finds was reasonably expended. The product of this computation the lodestar figure. Finally, the Court has combined the two tables to show the total lodestar amount for all timekeepers, and this amount is the presumptively reasonable fee:

| TIMEKEEPERS | HOURS BILLED | HOURS ALLOWED | TOTAL LODESTAR |
|---|---|---|---|
| *Fees for Meyers & Luma* | 214.5 | 59.3 | $13,318.00 |
| *Fees for Beugelmans, Kurpinska, & Blumberg* | 5.7 | 5.7 | $1,334.00 |
| **TOTAL** | **220.2** | **65.0** | **$14,652.00** |

**C.    Step Two – Additional Considerations**

Having considered all of the relevant factors not subsumed into the initial lodestar analysis, the Court concludes that none of them warrant a revision of Morgan Stanley's fee application. In light of this conclusion, the Court will award Morgan Stanley $14,652 in attorneys' fees.

**III.    COSTS INCURRED IN THIS ACTION**

Rule 54 of the Federal Rules of Civil Procedure provides for an award of costs to a "prevailing party." Fed. R. Civ. P. 54(d)(1). Courts must first determine who is a "prevailing party" under Rule 54, and second, must determine how much (if any) costs should be awarded.

*Ass'n of Mex.-Am. Educators v. Cal.*, 231 F.3d 572, 593 (9th Cir. 2000) (noting that district courts have discretion in choosing to award costs under Rule 54(d)). Under Ninth Circuit law, there is a presumption in favor of awarding costs to the prevailing party. *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006). To overcome this presumption, the losing party must establish a reason to deny costs. *Id.*

The Motion requests an award of nontaxable costs of $1,245.20 and taxable costs of $400, totaling $1,645.20. Morgan Stanley submitted documentation for the following costs: $745.20 to transcribe the arbitration hearing, $400 filing fee, and $500 paid to the Clerk of the Court for counsel's *pro hac vice* admission fees. Mot. Exs. 5 & 6 (Dkt. #28-1); *see also* Bill of Costs (Dkt. #31). Mann does not challenge the costs claimed. Having reviewed Morgan Stanley's costs, the Court finds that $1,645.20 is a reasonable amount of costs and will award the same.

Based on the foregoing,

**IT IS ORDERED** that Respondents' Motion for Attorneys' Fees and Costs (Dkt. #28) is GRANTED IN PART. The Court awards attorneys' fees of $14,652.00 and costs of $1,645.20.

Dated this 28th day of March, 2016.

Peggy A. Leen

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE